**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

BYRON TAYLOR, ET AL.                                     CIVIL ACTION

VERSUS                                                          NO. 19-10635

HD AND ASSOCIATES, LLC,                              SECTION: "B"(1)
ET AL.

<u>ORDER AND REASONS</u>

Before the Court are several opposed motions for summary judgment. Defendants HD and Associates, LLC ("HDA") and John Davillier's filed three motions for summary judgment: (1) under the bona fida commission exemption to the Federal Labor Standards Act ("FLSA") (Rec. Docs. 84, 93), (2) under the FLSA's enterprise exception (Rec. Docs. 103, 116), and (3) regarding plaintiff Jonathan Charles (Rec. Docs. 108, 124). Plaintiffs Byron Taylor, Teraine R. Dennis, Kenneth Hunter, Kendall Matthews, and Lonnie Treaudo filed a motion for partial summary judgment regarding the plaintiffs' employment status (Rec. Docs. 97, 110).

For the reasons discussed below,

**IT IS ORDERED** that plaintiffs' motion for partial summary regarding employment status is **DENIED;**

**IT IS FURTHER ORDERED** that defendants' motions for summary under regarding the bona fide commission exemption and enterprise exception are **GRANTED;** and

1

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment regarding claims by plaintiff Jonathan Charles is **DISMISSED AS MOOT.**

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs filed the instant action under the Federal Labor Standards Act ("FLSA"), alleging that they often worked over forty hours each week and were not paid overtime. Defendant John Davillier is the managing-member and founder of defendant HD and Associates "HDA". HDA is a subcontractor of Cox Communications ("Cox"), a cable and internet access service provider. Rec. Doc. 84-14 at 1. Cox contracted with HDA to perform the installation, troubleshooting and repair of cable television, telephone, and internet access services that Cox provides to its residential customers. *Id.* at 2. Cox owns the installed equipment and rents it to customers; HDA stored necessary equipment at its warehouse to use for installations. *Id.*

Plaintiffs previously worked as cable technicians for HDA and serviced Cox's residential customers. The employment relationship between HDA and its technicians—whether the technicians were employees or independent contractors—is at issue.

Plaintiff Byron Taylor brought this collective action under the FLSA on May 22, 2019 to recover unpaid overtime wages. Rec. Doc. 1. This Court granted plaintiff's motion for conditional

certification of a collective action comprised of the FLSA claims of similar cable technicians on March 18, 2020. Rec. Doc. 60. The collective class was defined to include cable technicians that HDA engaged within twelve months of plaintiffs' demand letter to defendant or the filing of this court action, whichever occurred the earliest. *Id.* Plaintiffs never offered a demand letter to defendants; thus, the collective class includes only the technicians that HDA employed in the twelve months preceding the filing of the initial complaint—May 22, 2018 to May 22, 2019.

According to the terms of the 2017 Field Service Agreement between Cox and HDA (the "Cox Agreement"), Cox assigns services to HDA on an "AS NEEDED" basis in Cox's sole discretion. Rec. Doc. 84-15, 1 (emphasis included). Cox uses a point system based on a schedule of services it provides to its customers, wherein each service is allocated between zero and fifty points and pays HDA $4.00 per allocated point. *Id.* For example, a bundle installation for basic video and digital video in a single-family home is allocated seventeen points. Rec. Doc. 84-15, 6. If an HDA technician completes the installation, Cox pays HDA $68.00 for that one service order. *See* Rec. Doc. 84-15, 21.

In turn, HDA enters into contracts with technicians (the "Technician Contract") to perform the services as needed pursuant to the Cox Agreement. Rec. Doc. 84-16. Under the

3

Technician Contract, HDA paid technicians "not less than an hourly wage of $8.00 per hour" for the first forty hours of each week and $12.00 in overtime pay for each hour over forty hours worked each week. Rec. Doc. 84-16, 8. The Technician Contract included both a "Discretionary Performance Bonus" and "Discretionary Performance Chargebacks" based on the point allocation system under the Cox Agreement. *Id.* Each technician is eligible to earn $1.80 per point allocated if the technician used an HDA vehicle and $2.05 per point allocated if the technician used their own vehicle, "less any wages paid." *Id.* Poor performance or workmanship could result in a chargeback from the technicians in the amount charged to HDA. *Id.* However, technician wages would not drop below the $8.00 per hour/$12.00 per overtime hour after factoring in chargebacks. Rec. Doc. 84-16, 8.

Cox controls the technicians' work. Cox bills its customers a bundled cost for services, maintenance, and installation. A Cox customer initiates a request for new services, an upgrade, or troubleshooting, and Cox generates a work order for the requested service. Cox bundles its workorders for a given day and builds them into a route for each technician with anticipated times of arrival at each customer's residence based on a set time estimate for that work order. Technicians use a PDA with Cox's proprietary software application "CX Connect"

("Cox App") to receive their route and work order details each day. Based on the data the technician enters into the Cox App, Cox and HDA can track when a technician is on-site, when the work order is complete, and it can update the route/schedule for all technicians based on their individual progress.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56c); *See also* T*IG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

**B. The Fair Labor Standards Act**

Congress enacted the Fair Labor Standards Act ("FLSA") to protect covered workers from substandard wages and oppressive working hours. 29 U.S.C. § 201 *et seq.*; *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). Among its

6

other provisions, the FLSA requires employers to pay employees overtime compensation for hours worked in excess of forty hours in a given week at a rate "not less than" one and one-half times their regular rate. 29 U.S.C. § 207. Covered workers are employees engaged in commerce or employed by an enterprise engaged in commerce. 29 U.S.C. § 207. An enterprise "engaged in commerce" has employees engaged in commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce and has an annual gross volume of business in excess of $500,000. 29 U.S.C. § 203(s)(1)(A).

Several exemptions and exclusions exist within the statutory framework of the FLSA. FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit. *Auer v. Robbins*, 519 U.S. 452 (1997). The employer has the burden of proof to show that it is entitled to exemption. *Dole v. Mr. W. Fireworks, Inc.*, 889 F. 2d 543 (5th Cir. 1989). Exclusions and exemptions relevant to the motions before the Court include: (1) enterprises that do not engage in interstate commerce, § 203(s)(1)(A), (2) independent contractors, § 203 (r)(1), and (3) a *bona fide* commission of a service enterprise, § 207(i). Each exclusion and the coordinating motion will be discussed independently below.

### 1. Independent Contractors

The FLSA requires employers to pay *employees* at least one-and-one-half times the regular hourly rate for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). Independent contractors are exempt from such requirement. In determining the employee/independent contractor status, the relevant question is whether the individual, as a matter of economic reality, are economically dependent on the business to which they supply their labor and service. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). The Fifth Circuit utilizes "economic realities" or *Silk* factors to guide this inquiry including: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *U.S. v. Silk*, 331 U.S. 704 (1947). Other factors considered in the economic reality test include: (1) whether the employer possessed the power to hire and fire the employees; (2) whether the employees had control over their own schedules or conditions of employment; (3)which party determined the employee's rate and method of payment; and (4)whether the employer maintained employment

records. *See Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28 (1961); *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). "No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Hopkins*, 545 F.3d at 343. (internal citations omitted). It is often possible for both parties to point to the presence or absence of particular *Silk* factors and a rigid application of the guidelines "would be a futile exercise." *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

Analyzing the specific facts under this case proves to be just as futile. In addition to HDA possessing the power to hire and fire them, HDA supervised and controlled employee work schedules and conditions of employment, HDA determined the rate and method of payment to technicians for their work, and HDA maintained employment records on its technicians. Rec. Doc. 96-2. Accordingly, these factors support a finding that technicians were employees of HDA.

Yet, Cox held significant and perhaps more control over technicians than HDA. Cox administered a background check and drug test to potential technicians and approved each one before HDA could contract with them. Rec. Doc. 120, 11. Moreover, Cox maintained a constructive right to fire technicians by prohibiting them from working on Cox accounts without any input from HDA. *Id.*

Likewise, HDA had little control over the daily workorders that its technicians were contractually obligated to complete according to Cox's training and standards. *Id.* at 12. Cox controlled most of the technician's daily schedule, but technicians could take on more workorders if they wanted to and help other technicians struggling to complete their daily routes. *Id.* at 18. This further supports the third *Silk* factor because technicians had the ability to generate more income through more efficient and proficient work that allowed them to complete more workorders in a given day. Thus, the preceding factors support a finding that the technicians were independent contractors.

Out of an abundance of caution, we will conclude that a genuine issue of material fact exists regarding the employee/independent contractor status of the plaintiffs. Granting the plaintiffs' motion for partial summary judgment at this stage of litigation would be inappropriate.

### 2. Service Enterprises and Commissions

The Fair Labor Standards Act exempts covered employees in the service sector from its overtime requirements if: (1) their regular rate of pay is more than one and one-half times the FLSA minimum hourly rate, and (2) more than one-half of the employees' compensation is from commissions on services. 29 U.S.C. § 207(i). In response to defendants' motion for summary judgment, plaintiffs do not dispute that HDA is a service enterprise or that their rate

of pay is more than one and one-half times the FLSA minimum hourly rate. *See* Rec. Doc. 93. Plaintiffs' basic argument is that their compensation plan is not a "commission," and therefore, it is not exempt from the FLSA. *Id.*

Section 203 does not define "commission," but courts should give the provisions of the FLSA liberal construction to effectuate Congress' remedial intent and apply reason in a commonsense fashion. *See Dunlop v. Ashy*, 555 F.2d 1228 (5th Cir. 1977). In ascertaining the regular rate of employees' compensation for purpose of determining the amount of overtime compensation that is payable, the court must not look at the contract nomenclature but to actual payments, which the parties agreed shall be paid during each work week. *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 430 (1945). Merriam-Webster defines "commission" in this context as "a fee paid to an agent or employee for transacting a piece of business or performing a service … *especially* a percentage of the money received from a total paid to the agent responsible for the business." *Commission*, Merriam-Webster, https://www.merriam-webster.com/dictionary/commission (last accessed November 24, 2020) (emphasis included); *see also Yi v. Sterling Collision Ctrs.*, 480 F.3d 505, 508-09 (7th Cir. 2007) ("The essence of a commission is that it bases compensation on sales" and the worker's pay is "decoupled from actual time worked."). In *Yi*, Judge Posner made clear that "the word [commission] need not be used for the

11

exemption to be applicable].'" 480 F.3d at 508 (*cleaned up).*
Courts have applied a three-factor test to determine whether a
compensation plan included a commission that would be exempt from
the FLSA:

> (1) the employee's compensation must be tied to customer
> demand or the quantity of sales; (2) the compensation plan
> must provide performance-based incentives for the employee
> to increase his or her income; and (3) there must be
> proportionality between the value of the goods or services
> sold and the rate paid to the employee.

*Roeder v. Directv, Inc.*, 14-4091, 2017 WL 151401, at *29 (N.D.
Iowa Jan. 13, 2017) (quoting *Johnson v. Wave Comm GR LLC*, 4 F.Supp.
3d 423, 442 (N.D.N.Y. 2014)); *see also Yi,* 480 F.3d at 508-09;
*Alvarado v. Corp. Cleaning Serv. Inc.*, 782 F.3d 365, 368 (7th Cir.
2015). Plaintiffs contend they did not receive a commission, but
"were paid a piece rate and on a point-based system that did not
provide performance-based incentives for the Plaintiffs' to
increase his or her income." Rec. Doc. 94-6, ¶ 40. However, "in a
true piece-rate system, a worker would be paid per item produced,
even if there were no sale." *Roeder* at *29 (citing *Alvarado*, 782
F.3d at 367.) For example, a widget maker sells its widgets to one
company and in turn, the company's salespeople resell these widgets
for a profit. The salespeople earn a specific amount of money for
every widget they sell. The company pays the widget maker *every
time* he makes a widget for them but pays their salespeople *only*
when they make a sale. The widget maker is using a true piece-rate

system, while the salespeople are earning a commission. *See Alvarado v. Corp. Cleaning Serv., Inc.*, 07-06361, 2013 WL6184044, at \*6 (N.D. Ill. Nov. 18, 2013); *see also Dyal v. Pirtano Constr., Inc.*, 12-9687, 2018 WL 1508487, at \*7 (N.D. Ill. Mar. 27, 2018).

In *Alvarado*, the plaintiffs contended that, as window washers, they were paid on a piece-rate system pursuant to a collective-bargaining agreement. *Alvarado*, 782 F.3d at 367. The defendant-company assigned each window job a certain number of points based on the job's complexity and the estimated time it would take to complete that particular job. *Id.* The company then paid the window washers by multiplying the allocated number of points each worker earned by a certain rate. *Id.* The court held this compensation plan was a commission system because the window washers were paid *only* if there was a sale. *Id.*

Cox utilized a point system to pay its subcontractors for the services provided and paid HDA four dollars per "point." Rec. Doc. 84-14. HDA then paid the technician that provided the service a two-dollar "discretionary bonus" from that service fee. Rec. Doc. 84-15. While technicians were not in control of what type of work assigned to them each day, if technicians completed their daily route early and took on more workorders, they had the opportunity to earn more compensation while virtually working the same number of hours. *See id.* This type of compensation plan incentivized efficient work. For example, plaintiff Byron Taylor's time records

13

indicate that his first week of work included roughly seventeen hours of work performed at a customer's home. Rec. Doc. 84-18, 6. He had almost eight hours between jobs and visited the warehouse twice. *Id.* Defendants' economic expert credited Taylor one hour per warehouse visit, so Taylor worked approximately twenty-seven hours that week. *Id.* HDA paid Taylor $640, which is an approximate and conservative rate of $23.70 per hour worked that week. *Id.* This is well above the one and one-half times the FLSA minimum hourly rate (approximately $10.88 per hour), and contract nomenclature aside, more than one-half of his compensation (at a rate of $8.00 per hour) is from commissions on services.

Plaintiffs argue defendants' motion for summary judgment allegedly failed "to mention this specific affirmative defense" in violation of FRCP 8(c), and that they "had no opportunity to conduct appropriate discovery concerning this newly alleged defense." Rec. Doc. 94-5. That argument fails. Defendants pleaded "statutory exclusions, exceptions, setoffs, or credits under the FLSA" as an affirmative defense. Rec. Doc. 26, 5. This catch-all provision clearly puts plaintiffs on notice that any exclusions within the statutory scheme upon which they brought their own suit could be applicable in the case at hand. Plaintiffs were neither misdirected nor unfairly surprised. Other courts within the Fifth Circuit agree that the failure to plead the specific exemption under FLSA does not result in prejudice to the plaintiffs. *See,*

14

*e.g., Madsen v. Bank of Am. N.A.*, 12-0896, 2013 WL 821970, at *3 (N.D. Tex. Mar. 6, 2013).

Based on the foregoing analysis, the bona fide commission exemption has been shown applicable to the compensation plan at issue, and summary disposition is appropriate.

### 3. Interstate Commerce

In determining whether there is coverage under the FLSA, what is finally controlling in each case is the relationship of the employment to "commerce." *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310 (1960). Enterprises engaged in commerce include businesses that "conduct trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." § 203(b). The application of the FLSA depends on the character of employees' activities, rather than the nature of the employer's business. *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943); *see also Wirtz v. Wohl Shoe Co.*, 382 F.2d 848 (5th Cir. 1967); *Grimes v. Castleberry*, 381 F.2d 758, (5th Cir. 1967). To determine whether an employee was "engaged in commerce," the court considers whether the employees are actually in or so closely related to movement of commerce as to be a part of it. *McLeod v. Threlkeld*, 319 U.S. 491 (1943). However, unless the employer is engaged in commerce, the employees are not engaged in commerce under the FLSA. *Lewis v. Florida Power & Light Co.*, 154

F.2d 751 (5th Cir. 1946); *see also Wilson v. Reconstruction Finance Corp.*, 158 F.2d 564 (5th Cir. 1947).

HDA and its technicians are not engaged in commerce as defined under the Fair Labor Standards Act; therefore, defendants are entitled to a judgment as a matter of law. Plaintiffs rely on HDA's contract with Cox, Rec. Doc. 84-15, as proof that HDA technicians "work to complete interstate commerce." Rec. Doc. 115-2, 2. Specifically, plaintiffs point to the physical location of the companies and specific contract terms. HDA is a Louisiana limited liability company with its principal place of business in Gretna, Louisiana and Cox is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. HDA is to provide services for Cox "and its affiliates, divisions, districts, and systems located throughout the United States." *Id.*, Rec. Doc. 84-15.

An employee does not necessarily fall under FLSA coverage because the employer conducts business in more than one state. *Mitchell v. Welcome Wagon*, *Inc.*, 139 F. Supp. 674 (W.D. Tenn. 1954), *affm'd* 232 F.2d 892 (6th Cir. 1956). Regardless of the aforementioned contract language, HDA did not work outside the state of Louisiana during the requisite time period of this collective action. Rec. Doc. 103-1. HDA provides technicians for installation, troubleshooting and repair of television, telephone, and internet services provided by Cox. *Id.* HDA does not build,

16

buy, or sell the cable, television or telephone equipment used by Cox customers. *Id.* Moreover, HDA technicians only service Cox customers in Louisiana—mostly in the New Orleans Metro Area. *Id.*

Plaintiffs argue that this Court should look to the product's "continuity of movement" across state lines to determine if purely intrastate activities are an extension of interstate commerce. Rec. Doc. 115-2, 3 (citing *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993)). They cite two cases with similar facts to the instant case wherein the courts used a seven-factor test to determine whether a company intended to ship goods in interstate commerce when moving goods intrastate after remaining briefly in a storage facility. *See* Rec. Doc. 115-2, 3; *Musarra v. Digital Dash*, 454 F. Supp. 2d 692, 711-19 (S.D. Ohio 2006); *Horn v. Digital Cable & Communications, Inc.*, 06-325, 2008 WL 7137186 at *1 (N.D. Ohio June 12, 2008). In *Musarra*, DISH Network was the parent company of Digital Dish and shipped all equipment that its technicians needed to Digital Dish's distribution center. *Musarra*, 454 F.Supp at 695. From there, the equipment is distributed to one of its warehouses, where it is stored until technicians deliver it to DISH customers. *Id.* at 696. In *Horn*, Cox delivered all of the necessary equipment to its own warehouse in Parma, Ohio. *Horn* at *1. Digital Cable technicians then retrieved the equipment and delivered it to Cox customers. *Id.*

17

While these cases bear remarkable similarities to the present matter, both are inapposite. Unlike the logistical framework in *Masurra* and *Horn*, it is HDA, not Cox, that owned its warehouse and obtained all the supplies, materials and equipment for its work from Cox in Louisiana. Rec. Doc. 103-1, 2. Even if the equipment came from outside the state, Cox shipped the goods to another Cox-owned facility, not directly to HDA's warehouse, i.e., the equipment remained in Cox's possession from one state to another, was stored at the Cox facility in Louisiana, and then delivered to HDA's warehouse in Gretna. Consequently, there is a delineation in the product's "continuity of movement" across state lines before HDA technicians ever retrieved the necessary equipment for their daily workorders.

The instant case is more analogous to *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008), and *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309 (S.D. Fla. 2012). In *Navarro*, the employee's in-state purchase and installation of out-of-state automobile parts were not actual movements of goods in interstate commerce, and therefore, the employee was not entitled to overtime compensation under the FLSA. 533 F. Supp. 2d 1223. The court held the parts stopped flowing in interstate commerce when they were delivered and stored by the local dealers, and not when the employee installed the parts on customer automobiles. *Id.* In *Joseph*, the court held that a waitress

18

was not "engaged in commerce" even though the employee processed credit and debit card transactions, served food prepared from ingredients that crossed state lines, and served beverages produced out of state. 862 F. Supp. 2d 1309. The court found that credit cards for goods purchased locally did not qualify as engaging in interstate commerce, and *origin of products* are irrelevant to employee's engagement in interstate commerce. *Id.*

HDA contracting with Cox alone is not sufficient to conclude it engaged in interstate commerce. Further, plaintiffs' work was purely intrastate. It consisted of picking up equipment from HDA's Louisiana warehouse, after which they delivered, installed, and serviced customers in Louisiana only. Accordingly, for the reasons stated above, the Court finds that HDA technicians did not engage in commerce as defined under the FLSA and grant defendants' motion for summary judgment.

Further, even if plaintiffs' contentions hold true, and HDA engaged in interstate commerce, plaintiffs would be making a "catch-22" argument under the caselaw plaintiffs relied upon. In finding that the parties engaged in interstate commerce in both *Massura* and *Horn*, the courts found an exemption to overtime compensation under the Motor Carrier Act ("MCA"), an exemption "for employees for whom the Secretary of Transportation may regulate qualifications and maximum working hours." 49 U.S.C. § 31502(b); *Massura*, 454 F.Supp at 695; *Horn* at *1. This exemption

encompasses "motor carriers" and "motor private carriers." Under *Horn*[1], for an employee to be exempt from the FLSA overtime compensation as a motor private carrier, the employee must have been: (1) a person transporting property; (2) engaged in activities affecting the safety of operation of motor vehicles; (3) engaged in interstate transportation; an owner, lessee, or bailee of the property being transported; and (5) transporting the property for sale, lease, bailment or other commercial enterprise. 49 U.S.C. §§ 13102(13), 13501; *Horn* at *3. Here, it is undisputed that (1) plaintiffs transported property by motor vehicle, (2) the cable boxes and other Cox equipment were under the control of individual drivers as bailees, and (3) the cable boxes were leased to customers. Courts have consistently found that employees, who engaged in driving during their regular employment, affected the safety of operation of motor vehicles. *See Crooker v. Sexton Motors, Inc.*, 469 F.2d 206 (1st Cir. 1978); *see also O'Neal v. Kilbourne Med. Labs., Inc.*, No. 05-50, 2007 WL 956428 (E.D. Ky. Mar. 28, 2007). Therefore, all elements for the MCA exemption are satisfied except engagement in interstate commerce. Thus, if plaintiffs had successfully argued that HDA engaged in interstate commerce, the final element is satisfied and HDA technicians would be classified as motor private carriers and still excluded from

---

[1] The court in *Horn* found that the MCA exemption did not apply to claims after August 10, 2005 because of an amendment in the statute, but that amendment has since been repealed and the statute now includes its original language.

overtime compensation under the MCA exemption. Accordingly, even if plaintiffs were engaged in interstate commerce, under the foregoing specific facts and caselaw, the instant action for uncompensated overtime would suffer the same fate.

### C. Jonathan Charles

A genuine issue of material fact may exist as to whether Jonathan Charles is similarly situated to the other plaintiffs in this suit; however, that issue is moot. Plaintiffs cannot overcome defendants' motions for summary judgment regarding the enterprise exception and the bona fide commission exemption that are applicable to Charles' situation if found otherwise covered by FLSA. Accordingly, the partial motion for summary judgment relative to his situational status with co-plaintiffs is dismissed as moot.

### III. CONCLUSION

For the reasons outlined above, the captioned action is dismissed based on defendants' entitlement to judgment as a matter of law on the enterprise exception and the bona fide commission exemption.[2]

---

[2] The well-reasoned decision by the Magistrate Judge, denying plaintiffs motion to compel production of HD's Payroll Protection Plan ("PPP") loan application to the Small Business Administration, is affirmed and adopted as the opinion of the court on that issue, dismissing plaintiffs' appeal therefrom. See Rec. Docs. 117, 129. All other pending motions are dismissed as moot in view of this opinion.

New Orleans, Louisiana this 2nd day of December, 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE